# IN THE SUPREME COURT OF TEXAS

══════════

No. 14-0721

══════════

USAA TEXAS LLOYDS COMPANY, PETITIONER,

v.

GAIL MENCHACA, RESPONDENT

══════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
══════════════════════════════════════════

JUSTICE GREEN, joined by JUSTICE GUZMAN and JUSTICE BROWN as to Parts I, II, and IV, dissenting, and joined by CHIEF JUSTICE HECHT, JUSTICE GUZMAN, and JUSTICE BROWN as to Part III, delivering a plurality opinion.

The Court's opinion outlines five rules governing the relationship between contractual and statutory claims. *See* ___ S.W.3d at ___. Under those five rules, I would hold that USAA Texas Lloyds Company is entitled to judgment in its favor because the plaintiff, Gail Menchaca, failed to prove that USAA was contractually obligated to pay benefits under the homeowners policy—a requisite showing to recover policy benefits for a violation of the Texas Insurance Code. *See id.* at ___. Because Menchaca failed to meet her burden of proof and failed to obtain a jury verdict that could support judgment in her favor, I would render judgment for USAA. Accordingly, I dissent from the Court's judgment remanding the case for a new trial for the reasons expressed in Parts I, II, and IV below. Additionally, I write separately to explain the plurality view on the issue of preservation of complaints of conflicting jury findings, in Part III below.

## I. Background

Three jury questions and answers are relevant here. Jury Question 1, which Menchaca insisted upon submitting despite the trial court's concerns and later urged the trial court to disregard,[1] relates to contractual liability:

> 1. Did USAA Texas Lloyd's Company ("USAA") fail to comply with the terms of the insurance policy with respect to the claim for damages filed by Gail Menchaca resulting from Hurricane Ike?
>
> Answer "Yes" or "No".
>
> Answer: **NO**

In answering "no," the jury thus rejected Menchaca's assertion that USAA breached the policy.

Jury Question 2 relates to extra-contractual liability and provided a list of potential statutory violations:

> 2. Did USAA engage in any unfair or deceptive act or practice that caused damages to Gail Menchaca?
>
> Answer "Yes" or "No" as to each subpart.
>
> "Unfair or deceptive act or practice" means any one or more of the following:
>
> A. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the liability under the insurance policy issued to Gail Menchaca had become reasonably clear; or
>
> Answer: **NO**
>
> B. Failing to promptly provide to Gail Menchaca a reasonable explanation of the factual and legal basis in the policy for the denial of a claim(s); or
>
> Answer: **NO**

---

[1] Menchaca requested Question 1, but later argued that the Court should disregard the jury's answer to the question.

C.     Failing to affirm or deny coverage within a reasonable time; or

Answer: **NO**

D.     Refusing to pay a claim without conducting a reasonable investigation with respect to a claim(s); or

Answer: **YES**

E.     Misrepresenting to Gail Menchaca a material fact or policy provision relating to the coverage at issue.

Answer: **NO**

Thus, the only liability finding against USAA was for failure to conduct a reasonable investigation. *See* TEX. INS. CODE § 541.060(a)(7) ("It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary: . . . refusing to pay a claim without conducting a reasonable investigation with respect to the claim . . . .").

Concerned about a potential conflict between the jury's answers to Questions 1 and 2,[2] the trial court ultimately disregarded the jury's answer to Question 1, concluding that the jury charge did not explain or define breach of contract, the question "fails altogether," "shouldn't have been submitted in the first place," was "incomprehensible to a layman," and "was poorly worded." I agree with the Court's conclusion that the trial court erred in disregarding Question 1. *See id.* at ___.

---

[2] At the hearing on the parties' motions for entry of judgment, the trial court asked:

Isn't that a conflict, the answer to question number one which is a breach of contract? Isn't that a breach of contract? I mean, failure to be reasonable in the investigation of the incident and the behavior of the adjuster is a breach of contract, and so now you have one that says, no, there is no breach of contract, and the other one says, yeah, there was? Isn't that a conflict between the two?

3

Finally, Question 3, which was submitted over USAA's objection:[3]

*If you answered "Yes" to Question 1 or any part of Question 2 or both questions, then answer the following question. Otherwise, do not answer the following question.*

3.      What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Gail Menchaca for her damages, if any, that resulted from the failure to comply you found in response to Question number 1 and/or that were caused by an unfair or deceptive act that you found in response to Question number 2.

        The sum of money to be awarded is the difference, if any, between the amount USAA should have paid Gail Menchaca for her Hurricane Ike damages and the amount that was actually paid.

        In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

        Answer in dollars and cents for damages, if any.

        Answer: $ **11,350.00**

USAA contends that Question 3 was merely a damages question, and the trial court seemed to agree.[4] I also tend to agree.[5] The Court seems to view Question 3 as another liability question about whether USAA owed Menchaca unpaid policy benefits—in other words, whether USAA

---

[3] USAA objected to Question 3, arguing that "the Texas courts have held that extra contractual damages need to be independent from policy damages." USAA tendered separate damages questions for the breach-of-contract claim and statutory-violation claim, but the trial court overruled USAA's objection and refused USAA's proposed questions.

[4] Having decided to ignore Question 1, the trial court explained what remained: "I can go with what I wanted to go with in the first place which was question number two, damage question, then attorney's fees."

[5] Question 3 was a conditional submission, to be answered only upon an affirmative answer to Question 1 or 2—in other words, to be answered only if Question 1 or 2 yielded a liability finding. Here Question 2 did so, so the jury proceeded to Question 3, which instructed the jury how to answer the "questions about damages" and to give an "[a]nswer in dollars and cents *for damages*, if any." (Emphasis added.)

failed to comply with the policy—concluding that the answer to Question 3 conflicts irreconcilably with the jury's answer to Question 1. *Id.* at ___. Either way, considering the jury's answers to all three questions, I would hold that USAA is entitled to judgment in its favor.

## II. Right to Receive Policy Benefits

In answer to Question 2, the jury found that USAA violated the Insurance Code by failing to investigate Menchaca's claim properly. As the Court's opinion explains, to recover for that statutory violation, Menchaca was required to prove either (1) she suffered damages independent of the loss of policy benefits, or (2) the statutory violation caused her to lose policy benefits to which she was entitled. *Id.* at ___. Menchaca abandoned claims for extra-contractual damages and sought only policy benefits as damages.[6] Thus, Menchaca can recover damages in this case only if she established a right to receive unpaid benefits due under the policy. Because she did not, I would render judgment in favor of USAA.

The jury's answer to Question 1 represents the jury's conclusion that Menchaca failed to satisfy her burden of proof on her claim that USAA breached the policy. *See id.* at ___ (agreeing that the answer to Question 1 "confirms [the jury's] conclusion that Menchaca 'failed to carry [her] burden of proof' to establish that USAA failed to comply with the policy's terms" (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989))). In other words, the jury rejected Menchaca's claim that the policy required USAA to do something that it failed to do. Had the jury determined that USAA owed Menchaca any unpaid benefits due under the policy, the jury could only have

---

[6] As damages for her breach-of-contract claim, Menchaca sought the "benefit of her bargain" under the policy. As damages for her statutory violation claim, Menchaca sought "actual damages, which include the loss of the benefits that should have been paid pursuant to the policy."

5

answered Question 1 "yes." More specifically, had the jury determined that Menchaca's damages from Hurricane Ike exceeded her deductible, the jury would have had to return a "yes" answer to Question 1. Because the jury answered "no," however, we can conclude only that USAA's Insurance Code violation did not cause Menchaca to lose any benefits that she was due under the policy. In fact, as the Court acknowledges, the jury's answer is supported by evidence that the amount of Menchaca's loss was less than the policy's deductible, *id.* at ___, so the policy did not obligate USAA to pay Menchaca anything. Menchaca cannot use a statutory violation theory of recovery to recover the very same contract damages that the jury specifically rejected. *Cf. City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752–53 (Tex. 1995) (holding that jury's "no" answer to liability question rendered submission of question involving plaintiff's negligence immaterial).

This result is consistent with the Court's no-recovery rule, ___ S.W.3d at ___, and with our holding in *Provident American Insurance Co. v. Castañeda*, 988 S.W.2d 189 (Tex. 1998), which I believe govern this case. Under the no-recovery rule, an insured cannot recover *any* damages for an insurer's statutory violation without establishing either the right to receive policy benefits or an independent injury. ___ S.W.3d at ___. An insurer's statutory violation does not, by itself, establish an entitlement to policy benefits. *See Castañeda*, 988 S.W.2d at 198, 201 (recognizing that "failure to properly investigate a claim is not a basis for obtaining policy benefits" and rendering judgment for the insurer whose conduct was not "the producing cause of any damage separate and apart from those that would have resulted from a wrongful denial of the claim"); *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 n.3 (Tex. 1995) ("[S]ome acts of bad faith, such as a failure to properly investigate a claim or an unjustifiable delay in processing a claim, do not necessarily relate to the

6

insurer's breach of its contractual duties to pay covered claims, and may give rise to different damages."). Menchaca could have sought damages for an independent injury, but she chose not to. Instead, she sought only policy benefits, and the jury did not find that USAA breached the policy—an answer supported by evidence that the damages were less than Menchaca's deductible. *See* \_\_\_ S.W.3d at \_\_\_ (acknowledging that some evidence supports the jury's answer to Question 1). Because Menchaca failed to establish a right to receive policy benefits, she is not entitled to recover any damages for USAA's Insurance Code violation under *Castañeda* and the Court's no-recovery rule.

The Court's general rule yields the same result. Under the general rule, if the insured does not have a right to benefits under the policy, she cannot recover policy benefits as damages for an insurer's statutory violation. *Id.* at \_\_\_. The jury's answer to Question 1 rejected Menchaca's claim that she has a right to unpaid benefits under the policy. Therefore, under the general rule, Menchaca is not entitled to recover policy damages for USAA's Insurance Code violation.

The plaintiff bears the burden of proving her case and obtaining jury findings to support a judgment in her favor. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 480–81 (Tex. 2017) (recognizing that the burden to secure proper findings to support a theory of recovery is on the plaintiff); *BP Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 395 n.4 (Tex. 2017) (explaining that the Court did not need to resolve the issue of conflicting jury findings because the plaintiff did not obtain a finding in its favor that could support a judgment against the defendant); *Grenwelge v. Shamrock Reconstructors, Inc.*, 705 S.W.2d 693, 694 (Tex. 1986) (holding that the jury's failure to find that the defendant breached the contract "merely means that the [plaintiffs]

7

failed to carry their burden of proving the fact"); *Vestal v. Gulf Oil Corp.*, 235 S.W.2d 440, 442 (Tex. 1951) (recognizing that on an ultimate issue, "the burden rested on the petitioners to plead and prove and secure a jury finding"); *Little Rock Furniture Mfg. Co. v. Dunn*, 222 S.W.2d 985, 990 (Tex. 1949) (explaining that before a party is entitled to judgment in its favor, it must satisfy its burden of obtaining jury findings in its favor on every essential element of its claim). When the plaintiff does not discharge that burden, judgment cannot be rendered in her favor. *See Union Mut. Life Ins. Co. v. Meyer*, 502 S.W.2d 676, 679 (Tex. 1973); *Little Rock Furniture Mfg. Co.*, 222 S.W.2d at 990. Here, Menchaca has not discharged her burden and is not entitled to a damages award for USAA's statutory violation. As a result, there is no reason to remand the case.

The Court's remand suggests an exception to the no-recovery rule—that an insured may recover policy benefits as damages for a statutory violation despite an insured's failure to prove entitlement to policy benefits and a jury's answer that the insurer did not breach any of its obligations under the policy. When the jury found liability on only one basis—a statutory violation—and the plaintiff failed to prove entitlement to policy benefits and failed to seek damages for an independent injury, the plaintiff is not entitled to recover any damages. Applying the Court's five rules to the facts of this case, I would hold that USAA is entitled to judgment in its favor.

### III. Preservation

Generally, a party should object to conflicting answers before the trial court dismisses the jury. The absence of such an objection, however, should not prohibit us from reaching the issue of irreconcilable conflicts in jury findings. I disagree with JUSTICE BOYD's suggestion that a

8

defendant's failure to object in a case such as this requires judgment for the plaintiff or prohibits us from ruling in the defendant's favor.

Texas Rule of Civil Procedure 295 provides a mechanism for trial courts to resolve conflicting jury findings by sending the jury back for further deliberations. That rule provides that "[i]f [a] purported verdict is defective, the court *may* direct it to be reformed." TEX. R. CIV. P. 295 (emphasis added). The rule goes on to explain how the court must direct reformation if it chooses to do so:

> If it is incomplete, or not responsive to the questions contained in the court's charge, or the answers to the questions are in conflict, the court shall in writing instruct the jury in open court of the nature of the incompleteness, unresponsiveness, or conflict, provide the jury such additional instructions as may be proper, and retire the jury for further deliberations.

*Id.* JUSTICE BOYD focuses on "shall" in that sentence, concluding that the only remedy for conflicting jury answers is for the trial court to direct further jury deliberations. ___ S.W.3d at ___. But that ignores "may" in the preceding sentence—"the court *may* direct [the verdict] to be reformed." TEX. R. CIV. P. 295 (emphasis added). The comment to Rule 295 explains:

> The amendment [effective January 1, 1988] makes it clear that the court *may* direct a complete yet defective verdict to be reformed. The amendment also makes it clear that in the event the verdict is incomplete or otherwise improper, the court is limited to giving the jury additional instructions in writing.

*Id.* cmt. (emphasis added). So if the jury's answers conflict, the trial court *may* direct the jury to deliberate further, and if the trial court chooses to do so, additional jury instructions must be given in writing. Rule 295 does not mandate that conflicts not resolved through further deliberations are waived; the rule simply mandates written instructions in the event that the court decides to have the jury deliberate further to reform the verdict. Rule 295 does not prohibit a court from exercising

9

another option, however: If the plaintiff insisted on submitting its claims in a way that cannot support the plaintiff's claim for recovery in light of the jury's answers, nobody objects to the jury's answers, and both parties insist there is no conflict, the trial court may enter judgment for the defendant without running afoul of the rule.[7]

If the trial court opts not to direct reformation of the verdict, as Rule 295 allows, but instead enters judgment, an option JUSTICE BOYD does not recognize, JUSTICE BOYD believes that Rule 295 prohibits an appellate court from disturbing that judgment absent an objection to conflicting jury answers. ___ S.W.3d at ___. According to JUSTICE BOYD, the Rule 295 verdict-reformation process is the *only* remedy for conflicting jury answers, and that process is triggered only if the party who would later challenge judgment on the verdict objects before the jury has been dismissed. *Id.* at ___. If that process is never triggered, the issue of conflicting jury answers has not been preserved for appellate review and cannot be considered even if the jury's answers fatally conflict and cannot support the judgment. *Id.* at ___. This analysis misconstrues Rule 295, misapplies our precedent, and ignores trial realities, as this case demonstrates.

JUSTICE BOYD bases his preservation standard on cases involving incomplete verdicts, extending the rule in those cases to cases involving conflicting jury answers. *Id.* at ___. We have

---

[7] JUSTICE BOYD acknowledges that Rule 295 leaves room for a trial court to reconcile conflicting findings but, ignoring the comment to the rule, refuses to acknowledge that a trial court may exercise other options without violating the rule. ___ S.W.3d at ___. Thus, JUSTICE BOYD reads language into Rule 295 that is not there:

> If <u>the jury's answers conflict irreconcilably or</u> the purported verdict is <u>otherwise</u> defective, the court ~~may~~ <u>must</u> direct it to be reformed. If it is incomplete, or not responsive to the questions contained in the court's charge, or the answers to the question are in conflict <u>and cannot be reconciled</u>, the court shall in writing instruct the jury in open court of the nature of the incompleteness, unresponsiveness, or <u>irreconcilable</u> conflict, provide the jury such additional instructions as may be proper, and retire the jury for further deliberations.

TEX. R. CIV. P. 295 (modified).

10

held that a "party who would benefit from answers" to questions the jury left blank must object to the incomplete verdict, "making it clear that he desires that the jury redeliberate on the issues or that the trial court grant a mistrial." *Fleet v. Fleet*, 711 S.W.2d 1, 3 (Tex. 1986); *see Cont'l Cas. Co. v. Street*, 379 S.W.2d 648, 650 (Tex. 1964) (holding that error was not preserved when the plaintiff "did not object to the acceptance of the jury verdict as incomplete, and thus by timely objection afford the trial court the opportunity, before the jury was discharged, of correcting the error (if such it was) of accepting the verdict with the issues unanswered"). This is because "a judgment cannot be based on a verdict containing unanswered issues, supported by some evidence, unless the issues are immaterial." *Fleet*, 711 S.W.2d at 3 (citing *Powers v. Standard Acc. Ins. Co.*, 191 S.W.2d 7 (Tex. 1946)); *see* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any . . . ."). So it makes sense to require a party to object to an incomplete verdict when answers to additional questions are necessary to a judgment in that party's favor. In that context, as soon as the jury returns its verdict, both the nature of the objection and the party who must object become clear. The same cannot be said in the case of conflicting jury answers, where the jury has answered all necessary and material questions, each party reasonably believes the verdict supports a judgment, neither party believes it would benefit from additional jury deliberations, and "the complaining party" cannot be ascertained until after the trial court enters its judgment, sometimes days or weeks later.[8] *See Burbage v. Burbage*, 447

---

[8] In this case, after the jury returned its verdict but before the jury was dismissed, the trial court made clear that it would not enter a judgment until a later date, after a separate hearing in which the parties could present argument. In response to Menchaca's counsel's attempt to argue about how any conflict in the verdict could be reconciled, the trial court stated:

> Well, you're out of line here. Now is not the time to be arguing that. The time to [argue] that is the time to enter judgment. And we'll [set up] a special hearing date, give both sides a chance to go over

11

S.W.3d 249, 256 (Tex. 2014) (requiring "the complaining party" to object and point out the specific grounds of the objection).

Recognizing that difficulty, Menchaca's counsel raised the possibility of conflicting answers before the jury was dismissed, attempting to argue that any conflict would not be irreconcilable. When the trial court made clear its view that the proper time for that argument would be later at a separate hearing, Menchaca's counsel stated: "If I'm understanding the Court correctly, I don't need to request that the Court call the jury back and have them reconcile these two issues." The trial court answered that Menchaca "wanted question no. 1," "insisted," "knew this was going to happen," "saw it coming," and was "stuck with it." Under JUSTICE BOYD's analysis, despite Menchaca's presentation of the conflict issue and suggestion of further deliberations to resolve any conflict, and the trial court's rejection of that suggestion, the issue of conflicting answers was not preserved, preventing an appellate court from being able to determine whether a judgment on that verdict could stand. It defies reason to hold that we cannot review the trial court's judgment because USAA, which did not yet know that it would be the party complaining of the judgment, failed to object when the conflict issue had already been raised in the trial court and the court rejected further jury deliberations to reform the judgment. Under these circumstances, when each party argues on appeal that it is entitled to judgment in its favor based on jury answers that may conflict, and the trial court

the verdict. And I'm sure that they're going to say – I'm sure they're going to say this is our win, you lose. And I'm sure you're going to say that's not true and that you are entitled to attorney fees as awarded and so forth. But that's the time for that. Not right now.

Because it was impossible to know which party would later complain of the court's judgment, JUSTICE BOYD's preservation standard apparently would require both parties to object to conflicting answers to ensure that appellate courts are not bound by a judgment entered on fatally conflicting answers.

12

and both parties were satisfied that further deliberations were unnecessary, I would hold that the appellate court is not prohibited from considering whether a judgment on the verdict can stand.

The Court reviewed conflicting answers under just such circumstances in *Little Rock Furniture Manufacturing Co. v. Dunn*, 222 S.W.2d at 988–91. In that case, the trial court asked both parties before dismissing the jury whether there was a conflict between answers, and both parties said no. *Id.* at 988. Before receiving the verdict, the trial court again asked the parties if they thought there were any conflicts, and the parties again said no. *Id.* When the issue of irreconcilable conflict was later raised, the trial court refused to grant a mistrial or a new trial. *Id.* Despite the trial court having given the parties multiple opportunities to object to conflicting jury answers and the parties choosing not to do so, this Court considered the issue of conflicting findings and whether the judgment must be set aside. *Id.* at 988–91. Although the disposition in that case was based on the holding that the conflict in jury answers not fatal, the Court was very clear that its ruling should not be interpreted as support for waiver in the case of an irreconcilable conflict: "We do not hold, however, that in a case of a fatal conflict in answers the parties can waive the conflict."[9] *Id.* at 991. Years later, this Court analyzed conflicting findings when neither party raised the issue before jury dismissal and both sought "outright victory." *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 195–96 (Tex. 1966); *see Meyer*, 502 S.W.2d at 679–80 (affirming the court of appeals' order of new trial because of a fatal conflict in jury answers, without any mention of waiver, preservation, or *St.*

---

[9] The next sentence of *Little Rock Furniture* states, "The law seems to be established that such a conflict cannot be waived by the parties and that a judgment on a verdict containing such a conflict must be set aside." 222 S.W.2d at 991. In *St. Paul Fire & Marine Ins. Co. v. Murphree*, 357 S.W.2d 744 (Tex. 1962), the Court seemed to change course, as discussed below. But the Court in *Murphree* offered no explanation for the change and did not cite any cases involving conflicting findings. I am not convinced that a judgment on a verdict containing a conflict must always, automatically be set aside, but I also note that the judgment in the case before us has never, until now, been based on jury answers that potentially conflict.

*Paul Fire & Marine Ins. Co. v. Murphree*, 357 S.W.2d 744 (Tex. 1962)). If the only way to obtain appellate review of a judgment entered on conflicting jury findings were to object before the jury is dismissed and have the jury resolve the conflict through further deliberations, this Court would never have recognized, as we have for almost fifty years, that appellate courts can review by mandamus trial court orders that grant a new trial based solely on an irreconcilable conflict. *See In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 208–09 (Tex. 2009); *Johnson v. Court of Civil Appeals for Seventh Supreme Judicial Dist.*, 350 S.W.2d 330, 331 (Tex. 1961).

As support for a preservation standard requiring an objection to conflicting findings before jury dismissal, JUSTICE BOYD cites the inapplicability of the fundamental-error exception to our preservation of error rules. ___ S.W.3d at ___. JUSTICE BOYD relies primarily on a single sentence in a 1962 case: "The entry of judgment by a trial court on conflicting findings does not constitute fundamental error." *Murphree*, 357 S.W.2d at 749. But the Court in *Murphree* never applied that sentence to the facts of the case, and the Court certainly never held that only an objection before jury dismissal would allow an appellate court to consider whether a judgment based on conflicting findings can stand. In fact, the opinion suggests that "assignment of error contained in [a] motion for new trial sufficient to bring this question to the trial court's attention" might have avoided a waiver problem. *Id.* at 748–49. This Court later explained our *Murphree* ruling, but again we did not hold that only an objection before jury dismissal would preserve error as to conflicting answers. *See St. Louis Sw. Ry. Co. v. Duke*, 424 S.W.2d 896, 898 (Tex. 1967). Rather, we explained that "[a]ssuming, without deciding, that there was an irreconcilable conflict in the jury answers, it was necessary to file a motion for new trial assigning as error the entry of judgment on conflicting jury

14

findings" when no motion for judgment notwithstanding the verdict or to disregard special issue findings had been filed. *Id.* (explaining *Murphree*, 357 S.W.2d at 744). Thus, to the extent that preservation is required under *Murphree*, this Court has recognized other mechanisms by which the conflict complaint can be preserved for appeal, including a motion to disregard specific findings, motion for judgment notwithstanding the verdict, and motion for new trial alleging erroneous entry of judgment based on entry of conflicting jury findings. Although I do not believe our preservation requirements prevent us from ruling in USAA's favor or even from considering the issue of conflicting jury answers in this case, I do believe that USAA's post-verdict motions were sufficient "to bring this question [of conflicting answers] to the trial court's attention" and thus preserved error.[10] *See Murphree*, 357 S.W.2d 748.

While JUSTICE BOYD provides a thorough discussion of the evolution of our fundamental-error doctrine, ___ S.W.3d at ___, it is not relevant to this case. The "discredited doctrine" is relevant only when a party challenges on appeal an alleged error that it did not preserve in the trial court, requiring us to decide whether our narrow fundamental-error doctrine permits appellate review of the unpreserved complaint. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003)

---

[10] After the jury returned its verdict, USAA filed a motion for judgment which, although lacking the word "conflict," pointed out the legal fallacy in the jury's answers—without a compensable contract claim, "any purported failure to investigate can not be a proximate cause of any damage because no money is owed under the contract." By seeking a take-nothing judgment based on the jury's answer to Question 1, USAA essentially requested that the trial court disregard the jury's answer to Question 3. Moreover, after the trial court entered its final judgment disregarding the jury's answer to Question 1 and awarding damages to Menchaca, USAA filed a motion to alter or amend the judgment, or in the alternative, motion for new trial. In that motion, USAA again argued that because the jury found that USAA did not breach its contract, Menchaca was not entitled to recovery on her extra-contractual claims—in other words, the jury's "no" answer to Question 1 and its finding under Question 3 that USAA "should have paid" contract benefits conflict. To whatever extent USAA was required to preserve a conflict complaint, I believe it did so. *See Felton v. Lovett*, 388 S.W.3d 656, 660 n.9 (Tex. 2012) ("[A] purely legal issue which does not affect the jury's role as fact-finder, raised for the first time post-verdict, may preserve error."); *Duke*, 424 S.W.2d at 898 (addressing error preservation for complaints of conflict in jury findings).

("Historically, we have used the term 'fundamental error' to describe situations in which an appellate court may review error that was neither raised in the trial court nor assigned on appeal.") (citing *McCauley v. Consolidated Underwriters*, 304 S.W.2d 265, 266 (Tex. 1957) (per curiam)). Here, USAA does not complain about conflicting jury answers in presenting its appeal.[11] And although USAA also did not take the position in the trial court that a judgment could not stand because of an irreconcilable conflict in the jury's answers, USAA's post-verdict motions preserved the issue of the legal fallacy of the jury's answer to Question 3 in light of its answer to Question 1. The judgment in this case was not based on conflicting answers—the trial court eliminated any conflict when it decided to disregard Question 1, before it entered judgment based on the jury's answers to Questions 2 and 3. This Court is the first to consider the answers to all three jury questions together, and the parties maintain their no-conflict position. This simply is not a case in which a party raises an issue on appeal but failed to preserve it in the trial court. We should not resolve this case by misapplying preservation rules, getting distracted by the fundamental-error doctrine, or ignoring the realities of the trial proceeding. Nor should we hold a defendant to a preservation standard that forces it to "forfeit a winning hand" or "ask the trial court to fix an error that would, as here, ultimately result in a judgment in its favor." *United Scaffolding, Inc.*, 537 S.W.3d at 481.

As in *Little Rock Furniture*, the trial court here practically invited the parties to object before the jury was dismissed. *See* 222 S.W.2d at 987–88. Despite Menchaca's counsel noting a conflict in the jury's answers, neither party objected because they each believed they had won. And as in

_____

[11] USAA did mention briefly that to the extent the jury's answers may conflict, the burden to object belonged to Menchaca.

16

*Little Rock Furniture*, that should not prevent us from considering whether the verdict can support a judgment in the plaintiff's favor. *Id.* at 989–91. This is especially true when a judgment has never been based on the entire verdict, but on the jury answers that had not been disregarded.

## IV. Conclusion

We should resolve this case by deciding the simple question of whether Menchaca met her burden to prove and obtain findings that USAA's statutory violation caused her to lose benefits that USAA owed under the policy. Based on the jury's answers to Questions 1, 2, and 3, the answer is no.[12] Applying the Court's five rules governing the relationship between contractual and statutory claims, I would hold that, under the no-recovery rule, Menchaca cannot prevail on her claim for unpaid policy benefits as damages for USAA's statutory violation.

Just as we can affirm a judgment in the plaintiff's favor when we determine that the answers do not conflict irreconcilably, *id.* at 991, I would hold that we can enter judgment in the defendant's favor when the answers establish that the plaintiff did not satisfy her burden of proof and is not entitled to any recovery.

For the reasons expressed above, I would render judgment that Menchaca take nothing on her claims.

_____
Paul W. Green
Justice

OPINION DELIVERED: April 13, 2018

---

[12] By concluding that Menchaca obtained all findings she needed for a judgment in her favor, JUSTICE BOYD does exactly what the trial court did—ignores the jury's answer to Question 1 in favor of the jury's answer to Question 3—but without admitting that it is doing so. In fact, JUSTICE BOYD purports to consider and give effect to the jury's answers to both Question 1 and 3. But the only way to conclude that Menchaca can recover damages for USAA's statutory violation is to ignore the jury's answer to Question 1.