

# NUMBERS 13-22-00431-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARCO GARCIA AND
ERNESTO GARCIA,                                                                Appellants,

v.

JESSY T. GARZA,                                                                    Appellee.

### On appeal from the 343rd District Court
### of Bee County, Texas.

# MEMORANDUM OPINION

### Before Justices Tijerina, Silva, and Peña
### Memorandum Opinion by Justice Tijerina

Appellants Marco Garcia and Ernesto Garcia (the Garcias) challenge the trial court's judgment in favor of appellee Jessy T. Garza. By two issues, the Garcias contend there was insufficient evidence to support a finding that Ernesto contracted to borrow money from Garza and that a bill of sale lacked essential terms. We affirm in part and

reverse and render in part.

# I.     BACKGROUND

The Garcias filed suit against Garza on September 17, 2018, claiming that Garza fraudulently transferred title of real property that belonged to Marco to Garza himself. The Garcias alleged that neither Marco nor Ernesto signed the deed, Garza tricked Ernesto into signing a blank paper, and Garza then used that paper to falsify the transfer of the deed to himself.[1] Garza filed a second amended original answer with a counterclaim seeking, among other things, repayment of the loans he allegedly made to Ernesto.[2]

A bench trial ensued where the parties presented conflicting evidence. On May 9, 2022, the trial court signed a judgment wherein, in pertinent part, it: (1) awarded Garza $202,526.19 for repayment of the loans he made to Ernesto, and (2) determined that Garza owns title to a metal building formerly belonging to the Garcias. The Garcias filed a motion for new trial, which the trial court denied. This appeal followed.

# II.     THE LOAN

By their first issue, the Garcias contend that the evidence is legally and factually insufficient to support a finding that Ernesto borrowed money from Garza because there is no written contract. Garza responds that a contract to borrow money can be oral.

## A.     Standard of Review and Applicable Law

The test for legal sufficiency is "whether the evidence at trial would enable

---

[1] The trial court awarded the real property to the Garcias, and Garza does not contest this finding on appeal.

[2] The evidence shows that Marco gave Ernesto a power of attorney to sign the deed and transfer the real property to Garza.

2

reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22. We must consider all the evidence in our factual sufficiency review. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 460 (Tex. App.—Dallas 2006, pet. denied) (citing *Plas–Tex., Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). We must reverse based on factual sufficiency when the trial "court's finding is so against the great weight and preponderance as to be manifestly unjust." *Id.* at 461–62 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

Whether oral or written, the following elements of a valid contract must be present: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 521 (Tex. App.—Eastland 2015, pet. denied). "Although, in most cases, courts have held that the elements of proof [as listed above] are the same for oral contracts as for written contracts, we assume those holdings to exclude the fifth element that deals with execution and delivery." *Id.* The elements of an oral contract "may be proved by either circumstantial or direct evidence." *Id.* Whether an oral contract exists is determined by reviewing the communications between the parties and to the parties' acts and the circumstances surrounding those communications. *Id.*; *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.) (citing *Cessna Aircraft Co.*, 213

3

S.W.3d at 465).

**B.     Analysis**

First, the Garcias argue that there is "no document, signed by Ernesto, in which [Garza] made an offer to Ernesto that Ernesto accepted," and therefore, Ernesto is not required to repay the loans to Garza. However, the Garcias cite no authority and we find none requiring a contract for the loan of money to be in writing. In fact, courts have found that oral contracts are as valid as written contracts. *See Turner*, 485 S.W.3d at 521 (explaining that an oral contract is enforceable so long as the elements of a contract have been satisfied). The Garcias do not argue that the oral contract was prohibited by any rule, and we have found none that are applicable here.[3] Therefore, we reject the Garcias' argument that Ernesto does not have to repay the loans because there is "no document, signed by Ernesto, in which [Garza] made an offer to Ernesto that Ernesto accepted."

Next, the Garcias argue there is no evidence of a meeting of the minds. However, evidence was presented that Ernesto asked Garza to lend him money on several occasions, and Garza did so. Garza presented records of the loans he made to Ernesto, and he testified that Ernesto promised to repay the loans. Moreover, Ernesto claimed that he had repaid some of the money that he borrowed from Garza. Viewing the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not, we conclude that the evidence is legally sufficient to support a finding that a meeting of the minds occurred. *City of Keller*, 168 S.W.3d at 821–22. Moreover,

---

[3] The Garcias do not claim that this contract falls under the Statute of Frauds.

4

considering all the evidence, we cannot conclude that the trial court's finding that a meeting of the minds occurred is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Cessna Aircraft Co.*, 213 S.W.3d at 461–62.

Finally, the Garcias argue that there is a problem with an exhibit provided by Garza purporting to show how much money Garza loaned Ernesto, DX-29. Specifically, the Garcias argue that DX-29 "attributes to Ernesto amounts that were owed to other [people]" The Garcias claim that the summary of the amounts Garza loaned Ernesto "overstates" how much Ernesto borrowed "by $58,192.20." The Garcias claim that DX-29 shows that Garza made payments "to others as being owned by Ernesto." However, at trial, Garza testified that he made the loans listed on the summary page of DX-29 to Ernesto, and the trial court as the factfinder believed him. *See id.* at 461. Garza testified that he loaned money to Ernesto from his "Smith Barney account" so he could keep records of the loans. Garza identified DX-29 as a "year-by-year listing of the amounts that Ernesto either borrowed through collateralization or just through loans." Garza explained that in ninety percent of "the cases," he wrote the check to Ernesto, "[b]ut the rest of them are where [Garza] pulled it out of supplemental data, but it's . . . as accurate as they can be made." Garza testified that he loaned Ernesto a total of $202,526.19.

Viewing the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not, we conclude that there is legally sufficient evidence that Garza loaned Ernesto $202,526.19. *See City of Keller*, 168 S.W.3d at 821–22. Moreover, considering all the evidence, we cannot conclude that the

trial court's finding of the amount loaned is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Cessna Aircraft Co.*, 213 S.W.3d at 461–62. We overrule the Garcias' first issue.

### III.    THE METAL BUILDING

By their second issue, the Garcias contend that the promissory note is missing material terms. Garza responds that oral and written agreements are valid.

The purported "promissory note," which was written behind a bill of sale conveying the metal building from "Lois C. Castillo (seller) to Ernesto Garcia (buyer)," states: "In consideration for $10,000.00 US [dollars] to be repaid within 3-weeks of the execution of this contract, I [Ernesto hereby] convey this bill of sale with payment due $14,285.71."[4]

"[M]aterial and essential terms are those that parties would reasonably regard as 'vitally important ingredient[s]' of their bargain." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (cleaned up). "To be enforceable, a contract must address all of its essential and material terms with 'a reasonable degree of certainty and definiteness.'" *Id.* (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955)). Generally, a contract to loan money must include the amount, maturity date, interest rate, and repayment terms. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 481 (Tex. 2019). The promissory note must be definite enough for the court to understand the parties' intent and to provide an appropriate remedy if it is breached. *Id.*

Here, although the promissory note states that Ernesto "conveys this bill of sale," it does not clearly state that under the repayment terms Ernesto would convey the metal

---

[4] Garza testified that he asked Ernesto to provide collateral for the $10,000 loan.

building to Garza if he failed to repay the loan within three weeks. Instead, the promissory note merely states that the payment due was $14,285.17. Garza did not testify that Ernesto agreed to convey the metal building to him if he failed to make the $14,285.17 payment. Garza only testified that he told Ernesto, that if Ernesto paid after the three weeks, then he would also have to pay the $4,000 tax Garza owed and that if Ernesto did not pay back the $10,000 loan within three weeks, "the amount he would have to repay was $14,285." Garza explained, "The reason for that $14,285 is because the difference between $10,000 and $14,285 is the taxes that I would have to pay because it came from a distribution out of Smith Barney." We conclude that Ernesto's relinquishment of title to the metal building in the event of a breach is a vitally important component of the parties' agreement, and there is nothing in the note memorializing that the parties intended for Garza to acquire ownership of the metal building if Ernesto failed to repay the loan. Therefore, we conclude that as a matter of law, the contract is not enforceable because it is missing a material term. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (setting out that to prevail on a contract claim, there must be proof of the existence of a valid contract). We sustain the Garcias' second issue.

## IV.    CONCLUSION

We reverse the judgment in part awarding the metal building to Garza and render a judgment in favor of the Garcias. We affirm the judgment in all other respects.

JAIME TIJERINA
Justice

Delivered and filed on the
7th day of December, 2023.

7